# Coleman *v.* Towanda Township, Appellant.

*Negligence—Townships—Defective bridge—Contributory negligence—
Question for jury.*

1. In an action against a township to recover damages for personal
injuries caused by a fall through a bridge, the case is for the jury
where the evidence tends to show that although the bridge was prop-
erly planned, it was negligently constructed.

2. In an action to recover damages for personal injuries, where the
plaintiff's own testimony is to some extent contradictory, it is the
province of the jury to reconcile the conflicting statements.

Argued Nov. 15, 1909.  Appeal, No. 227, Oct. T., 1908, by
defendant, from judgment of C. P. Bradford Co., Dec. T.,
1906, No. 119, on verdict for plaintiff in case of Ellen Cole-
man v. Towanda Township.  Before RICE, P. J., HENDERSON,
MORRISON, ORLADY, HEAD, BEAVER. and PORTER, JJ.  Af-
firmed.

Trespass to recover damages for personal injuries.

At the trial the jury returned a verdict for plaintiff for
$300.

On a rule for judgment non obstante veredicto, FAN-
NING, P. J., filed the following opinion:

The plaintiff, Ellen Coleman, instituted an action of tres-
pass against Towanda township to recover damages sus-
tained by the tipping of an unfastened plank on a bridge
which she was crossing.  The bridge in question was con-
structed by Henry Huyleman, path master, assisted by James
Johnson, Wallace Vanderpool and John Ackley, under the
directions and in accordance with instructions from the road
commissioners.  Mr. Huyleman states that this was the only
bridge he ever helped build.  The floor of the bridge was
constructed of three tiers of plank laid end to end; the two
lower or eastern sections were spiked down; also the outside
planks on the upper or western tier, leaving five of the inside
planks unfastened.  Mr. Place, one of the commissioners,

directed Huyleman how to build it, and saw how the plank were laid. The end of the bridge where the unspiked plank were laid was slightly higher, and sloping towards the lower end. These plank were laid on stringers six feet long, flatted on two sides, and five or six inches wide. The lower sections were covered with dirt. The upper or western section, where the accident occurred, was bare. The main traveled portion of the highway, which was extensively used, was over the two lower sections, but the upper was also a portion of the bridge and used for public travel. The upper end of the second tier of plank and the lower end of the western tier abutted together upon the same stringer—the former spiked, and five of the latter unfastened and having a support or projecting over or on the stringer a short distance. The one about a foot wide which gave way rested on the stringer, we think one witness states about two inches. One witness in his testimony conveyed the idea and perhaps others that it was thought the loose plank would retain their position because the eastern end of the same was slightly lower than the western end. One of these loose plank had worked off the stringer upon which it rested or became in some way detached therefrom so that a person stepping on the eastern end, there being no support underneath, would naturally go down. The plaintiff in crossing the bridge stepped on this end of the plank, which gave way beneath her feet, and went through the bridge. The evidence does not indicate that there was anything in the appearance of the plank to call attention to its dangerous condition. It is undoubtedly the duty of municipalities to so construct their bridges and highways that they are reasonably safe for ordinary travel. It is not contended in this case that a defect in the bridge arose subsequently to its construction, to which the attention of the road authorities was called, or to which they had constructive notice from the lapse of time after the defect arose, nor that it was a latent defect, but on the contrary that the bridge as originally constructed and with their knowledge was faulty, defective, improperly built and unsafe or liable to become so by reason of the omission to nail or fasten five of the

plank constituting a part of the flooring of said bridge. That the lower tiers of plank were spiked down is admitted, also the outside plank of the upper tier. The five inside plank could not work down because those against which they abutted were fastened. They could work or be moved in the other direction and off the sleeper. Whether the construction and maintenance of this bridge by the township authorities with five loose or unspiked plank was negligence; whether the bridge as so constructed was reasonably safe for public travel, we think were questions for the jury. They had the evidence before them as to the situation and surroundings, the character of the stringers, and extent of the support of the eastern end of the plank. They also visited the place of the accident by consent of the parties and permission of the court. Their finding was adverse to the township.

It is contended that even though the negligence of the township was established, that the plaintiff was barred by contributory negligence from a recovery. We think the court could not under the testimony have properly taken the case from the jury on this ground. It is the law of Pennsylvania that pedestrians in crossing streets and bridges are required to use their senses, to be alert, watchful and vigilant; to look where they are going, and their failure to exercise care according to the circumstances will defeat a recovery, if injured. This principle is clearly enunciated in Robb v. Connellsville Borough, 137 Pa. 42; McIlhenney v. Philadelphia, 214 Pa. 44, and a long line of cases. It is true that upon a rigid cross-examination the plaintiff in answer to this question, "If you had looked, you could have seen that plank, could you?" said, "If I had looked, but I did not look. Q. If that plank had been moved then as you looked, you could have seen it, could you? A. Yes, if I was looking for any danger, but I wasn't." And one or two similar answers were given. If it was clear from plaintiff's testimony that she walked into an opening in the bridge, which she could have seen by exercising ordinary care, by looking, the duty of the court would have been clear. But all the evidence must be taken together. She explains the accident in part as follows:

"I stepped right in; as I stepped right in on the plank it tipped. I stepped from the road right in on the plank and when I got on the plank it dropped in with me. Q. You were not looking where you were walking, were you? A. Yes, I was looking where I walked." Had the lower end of the plank been down, the other end would necessarily have been tipped up and its condition easily discernible. There is no testimony in the case that at the time the accident occurred such was the situation or that the working of the end of the plank off from the stringer sufficiently to let it down would leave a hole that could with ordinary care be observed. Mr. Place, one of the commissioners, passed over this bridge that day and observed nothing wrong. The testimony is not before us, but no witnesses as we remember testified that there was anything to call attention of travelers to the dangerous condition of the plank when she stepped on it. Mr. Place was there shortly after the accident and while the plaintiff was on the bridge. At that time, after the plank had gone down with the plaintiff one end was tipped down and the other end raised. Mrs. Coleman states that when she stepped on the plank it dropped in with her; that she watched and picked her way out of the mud. She also states that there was no hole there that she could see, nor anything indicating that the plank had slipped off. These statements, though to some extent conflicting, must we think be taken as a whole and in the light of the surrounding circumstances as disclosed by the testimony.

And now, October 15, 1908, rule for judgment non obstante veredicto discharged, and judgment directed to be entered on the verdict of the jury.

*Error assigned* among others was in overruling motion for judgment n. o. v.

*M. E. Lilley,* of *Lilley & Wilson,* for appellant, cited as to the negligence of the defendant: Graham v. Pennsylvania Co., 139 Pa. 149; Platz v. McKean Twp., 178 Pa. 601; Shieb v. Collier Twp., 11 Atl. Repr. 366; McGuire v. R. R. Co., 215

Pa. 618; Collins v. Philadelphia, 93 Pa. 272; Childs v. Crawford County, 176 Pa. 139; Rotsell v. Warren Borough, 10 Pa. Superior Ct. 283.

Cited as to the contributory negligence of plaintiff: Robb v. Connellsville Boro., 137 Pa. 42; Stackhouse v. Vendig & Co., 166 Pa. 582; Shallcross v. Philadelphia, 187 Pa. 143; Seigler v. Mellinger, 203 Pa. 256; Martin v. Williamsport, 208 Pa. 590.

*Wm. Maxwell,* with him *R. A. Mercur,* for appellee.—The case was for the jury: Easton Borough v. Neff, 102 Pa. 474; Kennedy v. Williamsport, 11 Pa. Superior Ct. 91; Fowler v. Jersey Shore Borough, 17 Pa. Superior Ct. 366; Zimmerman v. Conemaugh Twp., 2 Cent. Repr. 361; Riddle v. Delaware County, 156 Pa. 643.

The plaintiff had the right to assume that the bridge was reasonably safe, and that she, by the ordinary use of her eyes, at an ordinary pace, could safely walk upon the bridge: Bruch v. Phila., 181 Pa. 588; Allen v. DuBois Borough, 181 Pa. 184; Butcher v. Phila., 202 Pa. 1; Easton Borough v. Neff, 102 Pa. 474; Merriman v. Phillipsburg Borough, 158 Pa. 78; Ryan v. Ardis, 190 Pa. 66; Rick v. Wilkes-Barre, 9 Pa. Superior Ct. 399; Stokes v. Ralpho Township, 187 Pa. 333; Sheridan v. Palmyra Township, 180 Pa. 439; Dormer v. Alcatraz Paving Co., 16 Pa. Superior Ct. 407; Chambers v. Braddock Borough, 34 Pa. Superior Ct. 407; Shaffer v. Harmony Borough, 204 Pa. 339; Wall v. Pittsburg, 205 Pa. 48.

OPINION BY BEAVER, J., March 3, 1910:

The opinion of the court below, discharging the rule for judgment non obstante veredicto, which is the principal assignment of error, so clearly and concisely states the facts that, if it be included in the report of this case, it will be unnecessary to restate them here.

The defendant is charged with negligence in the construction of a simple plank bridge across a run seven feet wide, or thereabouts, which crosses the ordinarily traveled roadway. There was no special plan for the construction of this bridge, requiring the employment or design of an engineer. It is

not alleged, as we understand it, that any special design was furnished. The road commissioners directed the pathmaster in general terms how to place the stringers and lay the plank thereon, which together constituted the bridge. There is no allegation that the bridge was not sufficiently strong, nor that it failed to vent the waters which were expected to pass thereunder. The case, therefore, does not raise the questions argued by the appellant in the cases cited, where there has been an honest mistake as to plan, strength, scope, capacity, etc., of a municipal improvement constructed in accordance with a definite plan. There is no allegation that the plan was faulty, but that the construction was negligent. This question was for the jury, and was fairly submitted to it by the court below.

The other question in the case was that of contributory negligence, in that the plaintiff failed to give proper heed to her footsteps; in other words, that she failed to look where she was going. It is true that her testimony is somewhat contradictory in this respect. When, however, her attention was called specifically to the manner in which she approached and stepped upon the bridge and the question was asked, "You were not looking where you were walking, were you?" she replied, "Yes, I was looking where I walked."

In Ely v. Railway Co., 158 Pa. 233, at p. 238, Mr. Justice MITCHELL, in his opinion, says: "This testimony was contradictory, and the net result of it by no means clear. On part of it he was plainly entitled to go to the jury, on the other part equally plainly he was not. Under these circumstances, the case must go to the jury whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail."

Even if the plaintiff's testimony in this case admitted of the interpretation placed upon it by the appellant, it was clearly for the jury. Both the question of the negligence of the defendants and the contributory negligence of the plaintiff were for the jury. As to the manner in which they were submitted, there is no complaint.

.The refusal of the court to give binding instructions for the defendant and to enter judgment non obstante veredicto are practically the only questions raised by the several assignments of error. The court below correctly disposed of both.

Judgment affirmed.